IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 08-cr-00073-MSK

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ANTHONY JOSEPH CAPPIELLO,

       Defendant.

**ORDER ON MOTION TO RECONSIDER**

**THIS MATTER** comes before the Court on the Government's Motion to Reconsider Court's Order Granting Motion to Suppress **(#48),** which the Defendant opposes **(#52).** The Court has reviewed the Motion, Response, the underlying Order **(# 38)** which granted the Motion to Suppress **(# 12)** and the transcript of the day-long evidentiary hearing. The Court incorporates its prior findings and reasoning by this reference and supplements same with this Order.

**I. History**

The Defendant (Mr. Cappiello) is charged by indictment with violating 18 U.S.C. §§ 922(g)(1) by being a convicted felon in possession of a firearm; 924(c)(1)(A) by possessing a firearm in conjunction with a drug trafficking crime; and 21 U.S.C. § 841(a)(1) by cultivating 100 or more marijuana plants. Mr. Cappiello moved to suppress **(#12)**[1] evidence seized from

---

[1] The Defendant also filed a motion for hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) **(#25)**. No particular evidence was presented at the hearing with regard to this motion. As a result of the determination of the suppression motion, this second motion was denied.

his residence on January 6, 2008. On that date, there were two searches of Mr. Cappiello's residence, 501 Argus Drive in Colorado Springs, Colorado. One occurred without warrant or consent between 1:30 and 2:00 am. The second occurred after Mr. Cappiello's arrest during daylight hours, pursuant to a warrant. The warrant was based upon an affidavit containing information derived from the first search.

Mr. Cappiello contended that several aspects of the searches violated his Fourth Amendment rights. First, he argued that he was compelled to open his front door to police and therefore was, for constitutional purposes, seized without probable cause. Once having opened the door to the police, he contended that police officers entered and searched his house without probable cause or exigent circumstances. Finally, he contended that the warrant authorizing the second search of his house was invalid because it was premised upon an affidavit containing facts and information derived from the first unconstitutional search.

In response, the Government conceded that law enforcement officers did not have probable cause to search Mr. Cappiello's residence when they arrived in the early morning hours on January 6. They came to his house for the purpose of conducting a consensual "knock and talk," to discuss information about the sale of marijuana from the premises and the possibility of intruders conducting a home invasion to obtain drugs and cash. The Government contended that Mr. Cappiello voluntarily opened the door to his residence and engaged in a consensual conversation with the police officers. During this conversation, Mr.Cappiello falsely stated that he was alone and the officers smelled raw marijuana. The Government argued that the smell of marijuana and the observation of someone else in the residence (contrary to Mr. Capiello's representation that he was alone) provided probable cause and exigent circumstances justifying entry into and search of Mr. Cappiello's residence over his objection. During the search of the

basement of the residence, the officers discovered marijuana plants. They also seized a handgun from the living room and were told that by Mr. Cappiello that he had previously been convicted of a felony.

After arresting Mr. Cappiello and his girlfriend, who was also in the house, officers prepared and submitted an affidavit containing information obtained during the encounter and search in support of a request for a search warrant for the house. The warrant was issued based on the affidavit and the house was searched again later that day.

A day-long evidentiary hearing was conducted on June 26, 2008. In its written ruling **(#38)**, the Court reviewed the conflicting testimony, and without resolving the factual disputes, concluded that Mr. Cappiello was unconstitutionally seized at the door to his residence.[2] As a consequence, the Court ruled that all information obtained by virtue of the opening of the front door – the observed smell of marijuana, conversation with Mr. Cappiello, observation of another person in the residence, and the evidence obtained in the resulting search – was illegally obtained. Once such information was excised from the affidavit that supported the request for a search warrant, the resulting showing was inadequate to establish probable cause for the warrant's issuance. As a consequence, all evidence seized in the second search was also illegally obtained.

## II. Issue Presented

In the instant Motion for Reconsideration, the Government contends that the Court's determination that Mr. Cappiello was seized at the door to his residence, in violation of the

---

[2] The legal analysis in the Court's prior ruling is incorporated herein by this reference. In particular, the Court relied upon the analysis and holdings of *United States v. Reeves*, 524 F.3d 1161, 1166 (10th Cir. 2008; *United States v. Jerez*, 108 F.3d 684 (7th Cir. 1997); and *United States v. Flowers*, 336 F.3d 1222 (10th Cir. 2003).

Fourth Amendment, was incorrect. It argues that the facts of this case are not as extreme as those of *United States v. Reeves*, or a host of other cases where violation of the Fourth Amendment has been found when the police encounter an individual at the door to his/her residence.[3] It fears that the finding of a constitutional violation based on the facts of this case would render the "most benign" "knock and talk" encounters constitutionally infirm.

Mr. Cappiello disagrees. He responds that the reasoning of *Reeves* and other cases cited by the Government is not limited to the facts specific to each case. Instead, he argues that *Reeves* applies fundamental Fourth Amendment concepts with regard to a government intrusion into a person's home as recognized in *Payton v. New York*, 445 U.S. 573 (1980). He focuses upon the language in *Reeves*, "[I]f an individual's decision to open the door to his home to the police is not made voluntarily, the individual is seized inside his home." 524 F.3d at 1168, citing *United States v. Flowers*, 336 F.3d 1222,1226 n. 2 (10th Cir. 2003).

There is no doubt that the facts in this matter differ from those in the cases cited by the Government. Indeed, in many of them, police officers acted in a much more coercive manner. But *Reeves* and other cases herein do not circumscribe the entire universe of factual situations in which police behavior when seeking to contact a person who is within his/her residence becomes coercive. *Reeves* teaches generally that a "knock and talk" encounter is not consensual if the occupant is compelled to open the door and respond to officers due to exercise of their authority. 524 F. 3d at 1166. The question of whether a conversation at an individual's front door is consensual or not depends upon whether, in light of all of the circumstances, a reasonable person

---
[3] These include *United States v. Maez,* 872 F.2d 1444 (10th Cir. 1989); *United States v. Mowatt*, 513 F.3d 395 (4th Cir. 2008); *United States v. Al-Azzawy*, 784 F.2d 890 (9th Cir. 1985); *United States v. Morgan*, 743 F.2d 1158 (6th Cir. 1984); *United States v. Jerez*, *supra*; *United States v. Conner*, 127 F.3d 663 (8th Cir. 1997); and *United States v. Saari*, 272 F.3d 804 (6th Cir. 2001)

would feel free to decline the officer's requests; in other words, to refuse to open the door or to terminate the conversation once the door is opened. *Id* at 1169.

The determination as to whether Mr. Cappiello voluntarily opened his front door and engaged in a conversation with the police officers is one of fact. Pertinent circumstances include the time of the encounter (*e.g.* day or night), the manner in which the officers attempt to get the occupant's attention (*e.g.* do the officers knock, pound or yell and for what period of time), how many officers are present, whether they are uniformed or otherwise display their authority ( *e.g.* by carrying/displaying a weapon or touching the person at the door), the behavior of the officers (e.g. persistence in the face of no response, shining a light into the residence) and the language or tone of voice used and whether it conveys that compliance with the officers' demands is compulsory. *Id.* at 1168; *see* also *Jerez*, 108 F. 3d at 691-92; *Flowers*, 336 F.3d at 1227. In its prior ruling, the Court surveyed the evidence presented, noting many inconsistencies, but did not resolve factual disputes pertinent to this issue. To do so would have required an assessment of the credibility of the witnesses' testimony and consideration, in particular, of the challenges to the credibility of the lead police officer, Dale Huston.

Because the Motion for Reconsideration in premised upon disputed facts construed most favorably to the Government, it is necessary for the Court to resolve a number of factual disputes for which there was conflicting evidence. These include (1) how many officers stood on the doorstep of the house; (2) how many times Officer Huston rang the doorbell or knocked on the door; (3) Officer Huston's position and manner upon the opening of the front door; (3) when, during his conversation with Mr. Cappiello at the front door, Officer Huston entered the residence; and (4) the manner and circumstances of his entry into the house.

In making the following factual findings, the Court carefully reviewed all of the evidence presented and has taken into account observations of witness demeanor, consistencies and inconsistencies in testimony, reputation for truthfulness and untruthfulness and other factors that affect believability. The Court has assessed the credibility of witnesses, accorded varying weight to the evidence, and drawn reasonable inferences from such evidence. *See* Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 2586 (2008); *see also Thompson v. Rockwell Intern. Corp.,* 811 F.2d 1345, 1350 (10th Cir. 1987); *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008).

The Court has considered logical inconsistencies between the officers' testimony and undisputed facts, material factual inconsistencies among the officers' testimony, between their testimony and their reports, and between their testimony and the contents of the affidavit given in support of issuance of the search warrant.[4] In addition, the Court has considered Officer Huston's reputation for lack of truthfulness in prior investigations, searches, and seizures. Reluctantly, the Court finds the testimony of the officers with regard to certain facts to be less than credible.

### III. Factual Findings

Based upon conflicting evidence, the Court finds as follows:

1. At 1:40 am on Sunday, January 5, 2008, three uniformed, armed police officers stood outside the front door of Mr. Cappiello's residence. The front porch light of the residence was on, as was at least one interior light to the right of the front door, but the curtains were closed.

---

[4] In this regard, the lengthy recitation of the conflicting evidence in the prior Order is expressly incorporated.

2. The primary purpose of the officers' presence was to contact the occupant of the house to ascertain whether there were illegal drugs (marijuana) in the house. A secondary purpose was to prevent or intercept a possible home invasion. The objective of the lead officer, Dale Huston, was "get inside the doorway so we can...observe and look and smell so to see what's inside the door, talk to the individual, see if we can get verbal and written consent to search the house for narcotics."

3. Inside the residence, Mr. Cappiello and his girlfriend were seated in the living room to the right of the front door. They were playing a video game, and Mr. Cappiello was smoking a bong.

3. The front doorway of the residence had a screen door that opened outwards in one direction and an inner, wooden door with a peephole that opened in the opposite direction.

4. Officer Huston rang the doorbell. When he got no response, he knocked loudly three times.

5. After the doorbell rang, Mr. Cappiello stowed his bong and approached the front door. He looked through the peephole where he saw the three officers.

6. Still getting no response, Officer Huston again knocked loudly three times. This time Mr. Cappiello responded by asking who was there. Officer Huston responded "Colorado Springs Police," then commanded Mr. Cappiello to open the door.

7. Mr. Cappiello opened the wooden door only enough to stick his head out and opened the screen door just enough to ask the officers what they needed. At that point, Officer Huston grabbed the screen door and pulled it fully open.

8. Officer Huston did not advise Mr. Cappiello about the purpose for the police visit, nor did he ask questions directed to home invasion concerns. Instead, he inquired as to whether Mr.

Cappiello was aware of any disturbance outside the residence earlier in the evening, to which Mr. Cappiello answered, "No." Officer Huston asked Mr. Cappiello for his name, which Mr. Cappiello supplied. Then Officer Huston asked if he could come inside. Mr. Cappiello responded, "No."

9. Despite this response, believing that he heard something in the house, Officer Huston then pushed Mr. Cappiello against the wooden door with his left elbow and stepped inside the house. As he entered or immediately after, he asked Mr. Cappiello if anyone else was in the house. Mr. Cappiello responded, "Yes, my girlfriend," and pointed to her where she sat on the couch. Officers Genta and Thomson entered the house immediately after Officer Huston, and on his instructions began to search and secure the residence.

10. Mr. Cappiello opened his front door to converse with the police officers because he felt compelled to do so.

### III. Analysis

The question presented is whether the encounter between Mr. Cappiello and the Officers at the front door was consensual or not. The Government characterizes the encounter as a "knock and talk," which is a type of consensual encounter. Despite the nomenclature, however, an encounter at the door of a residence is not consensual if the occupant is compelled to open the door and respond to officers in response to their display of authority.

The circumstances here are unique: dark; early morning hour on a weekend; three uniformed, armed officers standing on the front doorstep; doorbell ring followed by repeated knocking; question by occupant for identification of the person(s) knocking, followed by identification of police and a command to open the door. To a reasonable person, such circumstances conveyed urgency accompanied by exercise of police authority to command the

occupant to open the front door. Under such circumstances, a reasonable occupant would not have felt free to ignore the officers and refuse the command.

Once the door was opened slightly, Officer Huston widened the entry by pushing open the screen door, never explained the reason for the contact, asked a few questions, and after being denied entry, forced his way into the house, representing that he had heard something inside. Such behavior would not have left a reasonable person the opportunity to terminate the conversation.

Despite the Government's characterization, this encounter was not a consensual "knock and talk." The totality of the circumstances reveal governmental compulsion which a reasonable person would not feel free to resist. As a consequence, for constitutional purposes the encounter became a seizure of Mr. Cappiello within his home without warrant or probable cause.

Because the seizure was unconstitutional, all fruits of it must be suppressed – any odor observed when the door opened, any evidence discovered or seized upon the first search of the residence, and any statements made by Mr. Cappiello. In addition, the warrant affidavit must be considered without reference to information obtained from the unlawful seizure. Without such facts, the affidavit contained only uncorroborated statements by the confidential informant.[5] The Government concedes that alone, the statements of the confidential informant were insufficient for probable cause, and there is no evidence of additional facts derived from the exterior inspection of the residence that would change the calculus. Thus, the warrant that was issued was insufficiently supported, the second search was also unconstitutional, and as a result, all evidence obtained from it must be suppressed.

---

[5] Arguably these might be augmented by the officers' observations of the house before the door was opened.

**IT IS THEREFORE ORDERED** that the Motion to Reconsider **(#48)** is **GRANTED** in that the Court has reconsidered its Order on the motion to suppress, but **DENIED** insofar as the Court does not alter its original ruling.

**IT IS FURTHER ORDERED** that a hearing on all other pending motions and for setting of trial is set for October 10, 2008, at 3:00 p.m.

Dated this 3d day of October, 2008

BY THE COURT:

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge